**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **WALTER ARMAD RASHAD YATES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08cv66-WC** |
| | ) | **(CR No. 2:06-cr-00168-WKW-WC-2)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**UNITED STATES'S RESPONSE TO § 2255 MOTION**</u>

COMES NOW the United States of America ("the Government") by and through its

attorneys, Leura G. Canary, United States Attorney, and Sandra J. Stewart, Assistant United

States Attorney, and in compliance with this Court's February 4, 2008 order, responds to

Petitioner Walter Armad Rashad Yates's Motion Under § 2255 To Vacate, Set Aside, Or Correct

Sentence By A Person In Federal Custody, as follows:

**I. PROCEDURAL HISTORY AND RELEVANT FACTS**

On July 11, 2006, a grand jury in the Middle District of Alabama returned a two-count

indictment against Petitioner Walter Armad Rashad Yates ("Yates") and one codefendant

Quintin Lemuel Rollins.  *See* GX A (Doc. 1)[1], a copy of the indictment in this case, attached to

this response.  Count one of the indictment only charged Yates's codefendant.  *See* GX at 1.

Count two of the indictment charged that, on or about November 6, 2005, in Montgomery

County, within the Middle District of Alabama, Yates, having been convicted of

---

[1]References to "Doc." are to the docket entries and documents in the criminal record in
this case, criminal case number 2:06-cr-00168-WKW-WC-2.

possession/receipt of a controlled substance in the Circuit Court of Montgomery County, Alabama, in case number CC-03-640 on November 17, 2003, knowingly possessed, in and affecting commerce, a Tec-Dc9, 9 mm pistol, a firearm, serial number D023016, in violation of 18 U.S.C. § 922(g)(1). *Id*. at 2.  The indictment also contained a forfeiture count requiring forfeiture of the firearms identified in the indictment on conviction. *Id*. at 2-3.  At his arraignment on July 18, 2006, Yates pleaded not guilty to count two of the indictment.  (Doc. 7)

Subsequently, Yates, represented by counsel, federal defender Donnie Wayne Bethel (Doc. 15), entered into a plea agreement with the Government.  *See* GX B (Doc. 41), a copy of the plea agreement in this case, attached to this response.  In return for his plea of guilty to count two of the indictment, the Government agreed:  (1) that the appropriate sentence in the case was a sentence at the low end of the Sentencing Guidelines range, assuming that Yates's criminal history category did not exceed a category II, and Yates provided substantial assistance to the Government; (2) that Yates should receive a two-level reduction for his acceptance of responsibility under U.S.S.G.[2] § 3E1.1(a), and to file a motion for an additional one-level reduction, unless Yates committed another criminal offense, violated any of the conditions outlined in the Commentary to U.S.S.G. § 3E1.1, or violated the terms of release or supervision; and (3) that there were no motions for downward departure in the case, and should Yates file such a motion or the Court, on its own, downwardly depart, the plea would be void.  *See* GX B at 2-3.  The Government also agreed that, if Yates provided substantial assistance to the Government and law enforcement, the Government would file a motion for a downward

---

[2]"U.S.S.G." is a reference to the United States Sentencing Guidelines, specifically to the November 1, 2006 version of the United States Sentencing Guidelines Manual, which was the version of the Guidelines used in determining the appropriate sentence in this case.

departure under U.S.S.G. § 5K1.1 and Rule 35 of the Federal Rules of Criminal Procedure. *Id.* at 3. The agreement also specifically provided that Yates "understands that the downward departure motion(s) and the level of departure is left to the sole discretion of the undersigned Assistant United States Attorney." *Id.*

In addition to pleading guilty, Yates also agreed to the following in his plea agreement: (1) that a sentence of imprisonment at the low end of the Sentencing Guidelines was an appropriate sentence in the case after calculation of the Sentencing Guidelines, provided Yates's criminal history category did not exceed category II; (2) that, in signing the agreement, he agreed to provide substantial assistance to law enforcement agents, as defined in the agreement; (3) that there were no other motions for downward departure applicable in the case and, that if he filed a motion for downward departure or the Court, on its own, downwardly departed in sentencing Yates, the plea agreement was void. *Id.* at 4-5. Yates also agreed to waive his right to appeal or file a collateral attack under 28 U.S.C. § 2255, except on the grounds of ineffective assistance of counsel or prosecutorial misconduct. *Id.* at 5.

The following factual basis for the plea was also contained in the plea agreement.

> Count 2, the defendant admits and understands that the nature of the charge to which the plea is offered involves proof that on or about November 6, 2005, Montgomery County, Alabama, the defendant was in the area of the Padlock Club Apartments located at 5050 Bell Road when he was approached by Montgomery Police Officer G.V. Clark. The alarm was going off in one of the businesses. Officer Clark approached Yates and asked for identification. Yates attempted to flee. Officer Clark drew his weapon and ordered Yates out of the car. Yates jumped out of the car, ran and jumped a fence and continued to run away. Yates was apprehended. Officer Clark found a black Baretta CX4-Storm

3

9mm assault rifle. ...[3]  On or about November 17, 2003, Yates was convicted of Possession and Receipt of a Controlled Substance, under case number CC-03-640 in Montgomery County, Alabama, that is, a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama.  All in violation of Title 18, United States Code, Section 922(g)(1).

*Id*. at 5.

A change of plea hearing was held before a magistrate judge, pursuant to Yates's agreement (Doc. 40), on November 21, 2006.  *See* GX C, a copy of the November 21, 2006 Change Of Plea Hearing, attached to this response.  After determining that Yates's guilty plea was being entered into knowingly, intelligently, and voluntarily, and ascertaining the factual basis for the plea, the magistrate judge accepted Yates's guilty plea.  *See* GX C at 4-14.

On May 10, 2007, a sentencing hearing was held in this case.  *See* GX D (Doc. 79), a copy of the May 10, 2007 sentencing hearing in this case, attached to this response.  At that hearing, after the Government outlined the terms of the plea agreement and informed the Court that there would be no substantial assistance motion filed pursuant to U.S.S.G. § 5K1.1, counsel for Yates noted that, in addition to his objection filed with the probation officer, he had been negotiating with the Government on whether there would be a motion for a downward departure filed based on Yates's substantial assistance.  *See* GX D at 3-4.  Counsel for Yates "believ[ed] there should be a motion for substantial assistance in this case, and that's something that I believe the Court will need to resolve."  *Id*. at 4.  The Court then accepted Yates's guilty plea and indicated it would resolve whatever issues were pending.  *Id*.

---

[3]The following line was struck from the factual basis contained in the plea agreement, and was initialed by the parties:  "Yates admitted that the 9mm Baretta belonged to him."  *Id*. at 5; *see also* GX C (Doc. 81), a copy of the November 21, 2006 Change Of Plea Hearing in this case, at 2, attached to this response.

Before addressing the issue regarding the Government's decision not to file a § 5K1.1 motion for a downward departure based on substantial assistance, the Court addressed Yates's objections to a six-level enhancement of his offense level under U.S.S.G. § 3A1.2(c)(1) based on Yates's assault of a law enforcement officer during the course of the offense or immediate flight therefrom. *Id*. at 4-15. After hearing argument from the parties, the Court overruled Yates's objections to the presentence report that were based on the application of that enhancement, and found the enhancement would apply. *Id*. at 13, 15.

Next, the Court took up the issue of the Government's decision not to file a § 5K1.1 motion for a downward departure based on Yates's failure to provide substantial assistance to law enforcement. *Id*. at 15. The discussions on that issue were held at the bench and the transcript of those discussion were placed under seal. *See* Doc. 80, a copy of that sealed transcript. After hearing from the parties at the bench, the Court found that it could not order the Government to file a § 5K1.1 motion under the circumstances discussed and that Yates was not entitled to credit for his substantial assistance. *See* Doc. 80 at 28. After this ruling, counsel for Yates stated that he "consider[ed] the prosecutor's refusal to file the downward departure that we've just discussed a breach of the plea agreement. I seek to withdraw on Mr. Yates's behalf from the plea agreement. I intend to appeal both the Court's ruling and the prosecutor's failure to give him the credit that he deserves for his cooperation." *Id*. at 28. The motion to withdraw the guilty plea was denied. *Id*.

The Court then determined that Yates's offense level was 23 and his criminal history category was I, resulting in a Sentencing Guidelines range of from 46 to 57 months, a supervised release period of from two to three years, and a fine range of from $10,000 to $100,000. *Id*. at

29.  After hearing witness testimony on behalf of Yates, and hearing argument from the parties, *id.* at 28-44, the Court proceeded to sentence Yates, *id.* at 44-47.  Based on its "consideration of the sentencing guidelines and evaluating the reasonableness of the sentence through the lens of 18 U.S.C. 3553 and considering the testimony and considering your circumstances, family, job, and so forth, it is the order, judgment, and decree of the Court that you are committed to the custody of the Bureau of Prisons to be imprisoned for a term of 46 months."  *Id.* at 45.  The Court also ordered that Yates be placed on supervised release for a term of two years, subject to mandatory, standard, and special conditions; that he pay a special assessment of $100; and any fine waived, due to Yates's inability to pay.  *Id.* at 45-46.  Finally, the Court ordered the firearms charged in the forfeiture count of the indictment be forfeited.  *Id.* at 46-47.

A final judgment outlining the conviction and sentence imposed was entered in this case on May 16, 2007.  *See* GX E (Doc. 74), a copy of the final judgment, attached to this response.  Yates did not appeal his conviction or sentence.  He filed his § 2255 motion with this Court on January 14, 2008.

## II.  CLAIM RAISED IN THE § 2255 MOTION

In his motion, Yates raises only one claim for relief.  He argues that the prosecutor committed misconduct when she failed to file a U.S.S.G. § 5K1.1 motion for a downward departure pursuant to the plea agreement based on his substantial assistance to law enforcement.

## III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**   **Yates Has Met The One-Year Statute of Limitations Under 28 U.S.C. § 2255.**

Yates has filed his motion raising his ineffective assistance of counsel claim in a timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time to

6

seek relief under the rule.  Section 2255 states that a motion be filed within one year from

> (1)  the date on which the judgment of conviction becomes final;

> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution and laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4)  the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.  The relevant date for purposes of Yates's § 2255 motion is paragraph (1), the date on which the judgment of conviction became final.

The final judgment in Yates's criminal case was entered on May 16, 2007.  *See* GX E (Doc. 74).  He did not appeal his conviction or sentence to the United States Court of Appeals for the Eleventh Circuit because he waived such right as a part of his binding plea agreement.  His sentence became final when the time for filing an appeal to the Eleventh Circuit expired.  Although not specifically addressing the application of the statute of limitations to the 10-day notice of appeal requirement, the Eleventh Circuit has held that a judgment of conviction becomes final for someone who appeals to an appellate court when the time for seeking certiorari review in the Supreme Court expires.  *See Kaufman v. United States*, 282 F.3d 1336, 1337-39 (11th Cir. 2002).  Likewise, a judgment of conviction becomes final for someone who does not appeal when the time for seeking that appeal expires.  *See*, *e.g.*, *Ramirez v. United States*, No. 05-10010, 2005 WL 1706142, at *1 (11th Cir. July 22, 2005) (unpub.).  Yates had 10 days from the May 16, 2007 entry of judgment by this Court to seek review by the Eleventh Circuit, *see* Fed. R.

App. P. 4(b)(1)(A)(i); his conviction and sentence became final, therefore, on May 26, 2007. Under § 2255, Yates then had until May 26, 2008 – one year after May 26, 2007 – to file his motion. He filed the instant motion on January 14, 2008, well-within one year from the time the judgment in his case became final. It is, therefore, timely under the limitation period in § 2255 ¶ 6(1).

**B.    Yates's Sole Claim For Relief Is Barred From Review In This § 2255 Proceeding Because He Could Have Raised The Claim On Direct Appeal, But He Did Not, And He Has Failed To Show Cause And Prejudice To Overcome That Procedural Default.**

Yates's only argument in his § 2255 motion is that the prosecutor engaged in misconduct when she refused to file a § 5K1.1 motion for a downward departure based on her analysis that he had not provided the substantial assistance required by the plea agreement. Yates insists that the information he gave law enforcement officers led directly to his codefendant's guilty plea in this case and that this cooperation constituted substantial assistance that should have required the filing of a downward departure motion. The argument that Yates raises in his § 2255 motion could have been raised on direct appeal of his conviction and sentence, but it was not. In fact Yates did not file an appeal, although his plea agreement provided he could appeal based on the misconduct of the prosecutor. *See* GX B at 5 ("This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct."). Because the claim was one that Yates could have raised on appeal, but did not, and because Yates offers no cause or prejudice to overcome that procedural default, or claim of actual innocence, this Court should reject his claim for relief.

A motion under § 2255 cannot be used as a substitute for appeal, *see Burke v. United*

*States*, 152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised on direct appeal that could

have been are generally barred from review in § 2255 proceedings, *see Massaro v. United States*,

538 U.S. 500, 504 (2003); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).  In

*Mills v. United States*, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly

summarized the law concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or
> sentence must be advanced on direct appeal or else it will be considered
> procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually
> "available" on direct appeal when its merits can be reviewed without further
> factual development....  When a defendant fails to pursue an available claim on
> direct appeal, it will not be considered in a motion for [Section] 2255 relief unless
> he can establish  cause for the default and actual prejudice resulting from the
> alleged error....  Alternatively, under the fundamental miscarriage of justice
> exception, "in an extraordinary case, where a constitutional violation has probably
> resulted in the conviction of one who is actually innocent, a federal habeas court
> may grant the writ even in the absence of a showing of cause for the procedural
> default....

*Id*. at 1055-56 (internal citations omitted).  *See also McCoy v. United States*, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See*, *e.g.*,

*Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

As noted, Yates offers nothing to support a cause and prejudice, or actual innocence,

analysis, and the burden to establish those things is on him.  Moreover, Yates could not establish

the necessary prejudice to overcome the procedural bar based on his failure to bring the claim earlier, because it was in the prosecutor's sole discretion to determine whether the information Yates provided constituted substantial assistance, and she determined it did not. *See United States v. Orozco*, 160 F.3d 1309, 1315-16 (11th Cir. 1998) ("Determining whether a motion for reduction of sentence will be filed is reserved to the government, which must ascertain what information the defendant has as well as the truthfulness and usefulness of this information before deciding whether it is appropriate to file a section 5K1.1 motion at sentencing or a Rule 35(b) motion for a convicted defendant thereafter."). And although a prosecutor's discretion whether to file a § 5K1.1 motion is not entirely insulated from review by a court, that decision may only be reviewed to determine whether the decision not to file the motion was based on unconstitutional motives. *See United States v. Dorsey*, 512 F.3d 1321, 1324-25 (11th Cir. 2008). Yates has not claimed in his § 2255 motion, nor has he ever claimed, that the prosecutor's decision not to file a motion for a downward departure under U.S.S.G. § 5K1.1 was unconstitutionally motivated, and in fact, it was not. Therefore, he cannot demonstrate that he is entitled to any relief on his claim, or that there was prejudice to overcome his procedural default.

This Court should reject Yates's sole claim for relief because it is procedurally defaulted, and he has not demonstrated either cause or prejudice to overcome his default.

## IV. MISCELLANEOUS

Yates has failed to plead facts or present sufficient evidence or argument demonstrating that he is entitled to an evidentiary hearing, and his claims for relief should be denied without such a hearing. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007) ("An evidentiary hearing is not required when 'the

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' "), *citing* 28 U.S.C. § 2255.; *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (Where a defendant fails to proffer any evidence that he would seek to introduce at a hearing, he is not entitled to an evidentiary hearing).  Should this Court determine that Yates has made any arguments not addressed in this response, the Government would request the opportunity to further respond to those arguments.

Any facts not specifically admitted in this response are denied, and the arguments made as to each claim raised are asserted in the alternative.

## V.  CONCLUSION

For the above reasons, Petitioner Walter Armad Rashad Yates has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 5th day of March, 2008.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney
131 Clayton Street
Montgomery, AL  36101-0197
(334) 551-1764
(334) 223-7135

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **WALTER ARMAD RASHAD YATES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:08cv66-WC** |
| | ) | **(CR No. 2:06-cr-00168-WKW-WC-2)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 5, 2008, I electronically filed the foregoing response and

attachments with the Clerk of the Court using the CM/ECF system and mailed, postage prepaid, a

copy of this response to the *pro se* Defendant/Petitioner as follows:

> Walter Armad Rashad Yates
> Rg. #11990-002
> FCI Yahoo Low City Detention Facility
> P. O. Box 5000
> Yahoo City, MS  39194

> Respectfully submitted,

> LEURA G. CANARY
> UNITED STATES ATTORNEY

> /s/  Sandra J. Stewart
> SANDRA J. STEWART
> Assistant United States Attorney
> 131 Clayton Street
> Montgomery, AL  36101-0197
> (334) 551-1764
> (334) 223-7135

**FILED**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUL 1 1 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CLERK |
| | ) | U.S. DISTRICT COURT |
| v. | ) | CR. NO. **2:06CR168-MHT**DDLE DIST. OF ALA. |
| | ) | [18 USC 922(g)(1)] |
| QUINTIN LEMUEL ROLLINS, and | ) | |
| WALTER ARMADRASHAD YATES, | ) | |
| a/k/a DOMINIC JERMAINE HENDERSON | ) | INDICTMENT |

AO8B8-C
**GOVERNMENT
EXHIBIT**

CASE
NO. **2·08cv 66**

EXHIBIT
NO. **A**

The Grand Jury charges:

## COUNT 1

On or about November 6, 2005, in Montgomery County, within the Middle District of

Alabama,

QUINTIN LEMUEL ROLLINS,

defendant herein, having been convicted on or about the dates set forth below of the offenses set

forth below, all felonies punishable by imprisonment for a term exceeding one year under the laws

of the State of Alabama:

| CONVICTION DATE | COURT | CASE NUMBER | OFFENSE |
|---|---|---|---|
| December 11, 2000 | Circuit Court of Montgomery County, AL | CC-00-602 | Conspiracy/Robbery First Degree |
| December 11, 2000 | Circuit Court of Montgomery County, AL | CC-00-603 | Robbery First Degree |
| June 27, 2000 | Circuit Court of Montgomery County, AL | CC-00-685 | Possession of Controlled Substance |
| January 5, 2005 | Circuit Court of Montgomery County, AL | CC-04-221 | Sodomy First Degree |

did knowingly possess in and affecting commerce a firearm, to-wit: a Baretta CX4, 9mm rifle, serial

1

**SCANNED**

number CX07765, in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT 2

On or about November 6, 2005, in Montgomery County, within the Middle District of

Alabama,

WALTER ARMADRASHAD YATES,
a/k/a DOMINIC JERMAINE HENDERSON,

defendant herein, having been convicted on or about the date set forth below of the offense set forth

below, a felony punishable by imprisonment for a term exceeding one year under the laws of the

State of Alabama:

| CONVICTION DATE | COURT | CASE NUMBER | OFFENSE |
|---|---|---|---|
| November 17, 2003 | Circuit Court of Montgomery County, AL | CC-03-640 | Possession/Receipt of a Controlled Substance |

did knowingly possess in and affecting commerce a firearm, to-wit: a Tec-Dc9, 9mm pistol, serial

number D023016, in violation of Title 18, United States Code, Section 922(g)(1).

## FORFEITURE ALLEGATION

A.    Counts 1 and 2 of this indictment are hereby repeated and incorporated herein by

reference.

B.    Upon conviction for the violation of Title 18, United States Code, Section 922(g)(1),

as alleged in Counts 1 and 2 of this indictment, the defendants,

QUINTIN LEMUEL ROLLINS, and
WALTER ARMADRASHAD YATES,
a/k/a DOMINIC JERMAINE HENDERSON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924, and Title 28,

2

United States Code, Section 2461(c), all firearms and ammunition involved in the commission of

this offense, including but not limited to the following:

**a Baretta CX4, 9mm rifle, serial number CX07765, and
a Tec-Dc9, 9mm pistol, serial number D02301,**

      C.     If any of the property described in this forfeiture allegation, as a result of any act or

omission of the defendant:

         (1)     cannot be located upon the exercise of due diligence;

         (2)     has been transferred, sold to, or deposited with a third person;

         (3)     has been placed beyond the jurisdiction of the court;

         (4)     has been substantially diminished in value; or,

         (5)     has been commingled with other property which cannot be divided without

difficulty, the United States, pursuant to Title 21, United States Code, Section 853, as incorporated

by Title 28, United States Code, Section 2461(c), intends to seek an Order of this Court forfeiting

any other property of said defendant up to the value of the property described in the above

paragraphs.

      All in violation of Title 18, United States Code, Section 922.

A TRUE BILL:

_James Davis Williams_
Foreperson

_Tommie Brown Hardwick_
TOMMIE BROWN HARDWICK
Assistant United States Attorney

_John T. Harmon_
JOHN T. HARMON
Assistant United States Attorney

3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA )
 )
v. ) CR. NO.  2:06cr168-WKW
 )
WALTER ARMADRASHAD YATES )

### PLEA AGREEMENT

DEFENSE COUNSEL: DONNIE W. BETHEL

ASSISTANT U.S. ATTORNEY: TOMMIE BROWN HARDWICK

**COUNTS AND STATUTES CHARGED:**
Count 2 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm

**COUNTS PLEADING PURSUANT TO PLEA AGREEMENT:**
Count 2 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm

**PENALTIES BY COUNT – MAXIMUM PENALTY:**
Count 2, 18 U.S.C.922(g)(1), Felon in Possession of Firearm
 NMT 10Y;
 NMT $250,000; or Both;
 NMT 3Y SUP REL;
 $100 AF;
 VWPA.

**ELEMENTS OF OFFENSES:**

Count 2, 18 U.S.C. § 922(g)(1), Felon in Possession of Firearm
First: That the defendant knowingly possessed a firearm in or affecting interstate
 commerce, as charged; and

Second: That before the defendant possessed the firearm the defendant had been convicted
 in a court of a crime punishable by imprisonment for a term in excess of one year,
 that is, a felony offense.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



AO88-C
GOVERNMENT
EXHIBIT

CASE
NO.  2:06cv 66

EXHIBIT
NO.  6

Tommie Brown Hardwick, Assistant United States Attorney, and Donnie W. Bethel, attorney for the

defendant, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have,

with the authorization of the undersigned defendant, heretofore entered into discussions with a view

towards reaching a pretrial conclusion of the charges pending in the Indictment and a Plea

Agreement has been reached by said parties. The plea is being submitted to the Court pursuant to

Federal Rule of Criminal Procedure 11(c)(1)(C), and the parties understand that, if the terms of the

Plea Agreement are not accepted by the Court, the defendant will be allowed to withdraw the

defendant's plea of guilty and will proceed to trial.

## GOVERNMENT'S PROVISIONS

1.    Upon entering a plea of guilty by the defendant to the offense charged in Count 2 of the

Indictment, the attorney for the government will do the following:

a. The government will agree, pursuant to Rule 11(c)(1)(C), that the appropriate

sentence is a sentence of imprisonment at the low range of the Guidelines after calculation by the

United States Probation Officer, assuming the defendant's criminal history category does not exceed

category II, and the defendant provides substantial assistance to the government.

b. The government agrees that the defendant should receive a two level reduction for

acceptance of responsibility under U.S.S.G. § 3E1.1(a). In addition, the government will file a

motion for a one level reduction under U.S.S.G. § 3E1.1(b), if applicable. However, the defendant

will not receive any acceptance of responsibility if the defendant commits another federal, state or

local offense after the dates of the present offenses; violates any of the conditions outlined in the

Commentary to §3E1.1, or in any way violates his term of release or supervision if applicable.

2

c. The government agrees that there are no other motions for downward departure applicable in this case. If the defendant files a motion for downward departure, or should the Court in its discretion using the United States Sentencing Guidelines as advisory, sentence the defendant below the low end of the Guidelines as calculated by the United States Probation Officer, this plea agreement will become void.

2.    The United States reserves the right to inform the Court and the Probation Department of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

3.    The defendant agrees to the following:

a. To plead guilty to Count 2 of the Indictment.

b. That a sentence of imprisonment at the low end of the Guidelines is an appropriate sentence in this case after the calculation of the sentencing guidelines, provided the defendant's criminal history category does not exceed category II.

c. The government agrees to file a motion for downward departure consistent with paragraphs d and e of this plea agreement.

d. The Government agrees that should the defendant provide substantial assistance to the government and law enforcement, the government will file a motion for downward departure under the provisions of U.S.S.G. § 5K1.1 and Rule 35, Federal Rules of Criminal Procedure, based upon the defendant's substantial assistance to the United States in this case. The defendant understands that the downward departure motion(s) and the level of departure is left to the sole discretion of the undersigned Assistant United States Attorney.

3

e.  It is understood that by signing this agreement, you agree to provide substantial

assistance to law enforcement agents. "Substantial assistance" with law enforcement

agents under this agreement is understood to include, but is not limited to, the

following:

(1)    Debriefing by the Federal and State Law Enforcement officers.

(2)    Making consensually monitored telephone calls to, or otherwise contacting, persons known to be involved in violations of the law.

(3)    Introducing undercover law enforcement officers to persons you know to be involved in illegal activity.

(4)    Maintaining contact with the law enforcement agents with whom you are working. You shall work under the direct supervision of law enforcement agents. At no time are you authorized to take any actions without first obtaining the direct authorization of such agents. Any independent and unauthorized actions will be deemed a violation of this agreement.

(5)    Testifying truthfully against any such persons before any and all grand juries and at any and all hearings and trials.

(6)    You agree to make a good faith effort to assist law enforcement agencies in arranging and making undercover contacts with other persons you know to be involved in illegal activity.

(7)    You will cooperate fully and truthfully with the government in this investigation and in any other federal criminal investigation. You will respond, completely, fully and truthfully to all inquiries addressed to you by representatives of the government, and you will testify fully and truthfully at any and all reasonable times and places before grand juries and against any and all defendants at the trial of any and all cases arising from this investigation or any other such investigation.

f.  The defendant agrees that there are no other motions for downward departure

applicable in this case. If the defendant files a motion for downward departure, or should the Court

in its discretion using the United States Sentencing Guidelines as advisory, sentence the defendant

4

below the low end of the Guidelines, this plea agreement will become void.

## FACTUAL BASIS

4.    The defendant admits the allegations charged as follows:

Count 2, the defendant admits and understands that the nature of the charge to which the plea is offered involves proof that on or about November 6, 2005, Montgomery County, Alabama, the defendant was in the area of the Padlock Club Apartments located at 5050 Bell Road when he was approached by Montgomery Police Officer G.V. Clark. The alarm was going off in one of the businesses. Officer Clark approached Yates and asked for identification. Yates attempted to flee. Officer Clark drew his weapon and ordered Yates out of the car. Yates jumped out of the car, ran and jumped a fence and continued to run away. Yates was apprehended. Officer Clark found a black Barretta CX4-Storm 9mm assault rifle. ~~Yates admitted that the 9mm Barretta belonged to him.~~ On or about November 17, 2003, Yates was convicted of Possession and Receipt of a Controlled Substance, under case number CC-03-640 in Montgomery County, Alabama, that is, a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama. All in violation of Title 18, United States Code, Section 922(g)(1).

## DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

5.    Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

5

In return for the above waiver by the defendant, the Government does not waive its right to appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver.

### DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

6.    The defendant, before entering a plea of guilty to Count 2 of the Indictment as provided for herein by said Plea Agreement, advises the Court that:

a. The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b. Defendant acknowledges that a breach of this federal plea agreement will not entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant.

c. The defendant further understands that, pursuant to Title 18, United States Code, Section 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the

6

best of the defendant's information, knowledge, and belief.

d. The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

e. The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

f. The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

g. The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government, and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

7

h. The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i. The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on the respective Court.

j. The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

k. The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

7. The undersigned attorney for the government and for the defendant represents to the Court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court,

8

waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

8.    The defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the Court, may differ from that projected by defendant's counsel or the United States Attorney.

This 21st day of November, 2006.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/Tommie Brown Hardwick
TOMMIE BROWN HARDWICK
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: tommie.hardwick@usdoj.gov
ASB4152 W86T

I HAVE READ THE FOREGOING PLEA AGREEMENT, UNDERSTAND THE SAME, AND

THE MATTERS AND FACTS SET FORTH THEREIN ACCURATELY AND CORRECTLY

STATE THE REPRESENTATIONS THAT HAVE BEEN MADE TO ME AND ACCURATELY

SET FORTH THE CONDITIONS OF THE PLEA AGREEMENT THAT HAS BEEN REACHED.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR

UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS"

PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I

HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY

DEFENSE COUNSEL, DONNIE W. BETHEL.

WALTER ARMADRASHAD YATES
Defendant

21 NOV 06
Date

DONNIE W. BETHEL
Attorney for the Defendant

21 Nov 07
Date

10

```
 1              IN THE UNITED STATES DISTRICT COURT
                               FOR
 2               THE MIDDLE DISTRICT OF ALABAMA

 3

 4

 5

 6   THE UNITED STATES
        OF AMERICA
 7                                     CRIMINAL ACTION NO.
             vs.                       2:06-CR-168-WKW
 8
     WALTER ARMADRASHAD YATES
 9

10

11

12

13

14              CHANGE OF PLEA PROCEEDINGS

15

16

17

18              *  *  *  *  *  *  *  *  *  *

19

20

21   HEARD BEFORE:        The Hon. Delores Boyd

22   HEARD AT:            Montgomery, Alabama

23   HEARD ON:            November 21, 2006

24   APPEARANCES:         Susan R. Redmond, Esq.

25                        Donnie W. Bethel, Esq.
```

AO88-C
GOVERNMENT
EXHIBIT

CASE
NO. 2:08 cv 66

EXHIBIT
NO.   C

1  WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
   DELORES BOYD ON NOVEMBER 21, 2006 AT THE UNITED STATES
2  COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4          THE COURT:  Good morning.

5          We're convened for proceedings in *United States vs.*

6  *Walter Armadrashad Yates.*  The case number is zero six C R one

7  sixty-eight.  Mr. Yates appears with counsel of record,

8  Assistant Federal Defender Mr. Bethel, and the United States

9  appears by Assistant U. S. Attorney Redmond.

10         Mr. Bethel, the Court received notice that your

11 client desires to change his plea from guilty to not guilty, is

12 that still his desire?

13         MR. BETHEL:  It is, Your Honor.  I do want to inform

14 the Court we do have one issue with the plea agreement.  We

15 would have had this resolved before the Court assembled,

16 however both me and Miss Hardwick have been in Judge Fuller's

17 courtroom all morning.  Ms. Hardwick is there as we speak.

18         There was one line that I thought was going to be

19 removed from the factual basis of the plea agreement.  That's

20 still in the plea agreement, and Ms. Redmond says she has no

21 authority to handle that having no information or knowledge

22 about the case, and it's perfectly understandable.  I do need

23 to resolve that issue with Ms. Hardwick, but as I said, Ms.

24 Hardwick is currently in Judge Fuller's courtroom.

25         THE COURT:  The Court will not proceed to have your

1    client enter a plea to an agreement that's not satisfactory

2    with its counsel.  Do you desire an opportunity to resolve the

3    issue or not?

4              MR. BETHEL:  Yes.  Oh, absolutely.  As soon as I can

5    speak with Ms. Hardwick I think it will be resolved straight

6    away, Your Honor.

7              THE COURT:  All right.  We will recess until you can

8    resolve the issue.

9              MR. BETHEL:  And I apologize to the Court.  But I

10   didn't receive the plea agreement until this morning when Miss

11   Hardwick and I were both in court, and I've had no opportunity

12   to discuss with her as she's currently in Judge Fuller's

13   courtroom.

14             THE COURT:  Thank you.

15             Mr. Long, if you'd make an effort to find counsel in

16   the *Hogan* case if we have not resolved the matter in *Yates*,

17   we'll proceed with *Hogan*.

18             Court will be in recess.

19             MR. BETHEL:  Thank you, Your Honor.

20             (Whereupon, a recess was taken.)

21             THE COURT:  We now have counsel and all prepared to

22   proceed with *United States vs. Walter Armadrashad Yates*, case

23   number oh six C R one sixty-eight.  Mr. Bethel is appearing

24   with his client, and Attorney Redmond appearing for Attorney

25   Hardwick on behalf of the United States.

1          Mr. Bethel, you are now ready to proceed, and the
2     Court is advised that you have modified at page five of the
3     plea agreement the portion which gave you concern, and it
4     appears that all initials are there.
5          MR. BETHEL:  Yes, Your Honor.
6          THE COURT:  All right.  We will now proceed on your
7     plea agreement and on your client's written authorization for
8     this Court to proceed.  Has that been executed yet?
9          MR. BETHEL:  Yes, Your Honor.
10         THE COURT:  Thank you very much.
11         Now Mr. Yates will be sworn.
12         (Whereupon, the defendant was duly sworn by the
13    courtroom deputy clerk.)
14         THE COURT:  All right.  Mr. Yates, if you would speak
15    directly into that mic.  State your full name, your age and how
16    far you went in school.
17    A.   Walter Armadrashad Yates.  Twenty-six.  Twelfth grade.
18         THE COURT:  Have you ever been treated for any kind
19    of mental illness?
20    A.   No, ma'am.
21         THE COURT:  Any kind of addiction to narcotic drugs?
22    A.   No, ma'am.
23         THE COURT:  Today are you under the influence of any
24    drug, medication or alcoholic beverage?
25    A.   No, ma'am.

```
 1              THE COURT:  Mr. Yates, it's important that you
 2    understand the Court's questions, so please do not be
 3    embarrassed if there is something said that is unclear to you,
 4    ask the Court to rephrase it until you understand it.  All
 5    right, sir?
 6    A.  Yes, ma'am.
 7              THE COURT:  Before today have you received a copy of
 8    the indictment?  That is the piece of paper outlining the
 9    criminal charges against you in this case.
10    A.  Yes, ma'am.
11              THE COURT:  And before today, did you have the time
12    you felt you needed to review and discuss those charges with
13    your lawyer, Mr. Bethel?
14    A.  Yes, ma'am.
15              THE COURT:  Are you satisfied today, fully satisfied
16    today with the advice and representation you've gotten in this
17    case from Mr. Bethel?
18    A.  Yes, ma'am.
19              THE COURT:  The Court has received a plea agreement
20    which bears your signature at page ten.  First, did you
21    authorize Mr. Bethel to talk with the lawyer for the United
22    States in order to negotiate for you this plea agreement?
23    A.  Yes, ma'am.
24              THE COURT:  And before you signed your name to this
25    agreement, did you satisfy yourself that you understood the
```

```
 1    provisions, either by reading them yourself, having Mr. Bethel
 2    read them to you, or otherwise having them explained to you?
 3    A.  Yes, ma'am.
 4            THE COURT:  You understand, then, that you are going
 5    to be sentenced in all likelihood based on United States
 6    sentencing guidelines.  Mr. Bethel has discussed that with you?
 7    A.  Yes, ma'am.
 8            THE COURT:  Let me be sure you understand that until
 9    there is a full background investigation completed for you by
10    the probation office, nobody can tell you for sure exactly how
11    those guidelines will apply to you.  Is that clear?
12    A.  Yes, ma'am.
13            THE COURT:  So whatever Mr. Bethel has indicated to
14    you is based on his best judgment pursuant to facts he now
15    knows.  Understood?
16    A.  Yes, ma'am.
17            THE COURT:  This plea agreement is very simple.  At
18    page three it calls for you to enter a plea of guilty to being
19    a felon in possession of a firearm as charged in count two.
20    You are agreeing with the United States that an appropriate
21    sentence for you is going to be on the low end of the
22    guidelines, assuming that your criminal history does not exceed
23    category two.
24            And the Government is agreeing to file for you a
25    motion for a downward departure that is outlined in particular
```

```
 1   at page two of your plea agreement.
 2            Now is there anything you need explained any further
 3   about what you have agreed to do and what the United States has
 4   agreed to do in return?  This is your opportunity.
 5   A.   No, ma'am.
 6            THE COURT:   All right.   That means you understand
 7   everything.
 8   A.   Yes, ma'am.
 9            THE COURT:   You understand as well that what's in
10   this written document represents all that you can expect from
11   the United States?  In other words, this is the agreement that
12   will be in force.   There will not be any other agreement,
13   whether in writing or whether it is something someone has told
14   you.  Is that clear?
15   A.   Yes, ma'am.
16            THE COURT:   Are you coming in today voluntarily?
17   That is, is it your desire to change your plea or has somebody
18   forced you to come to do that?
19   A.   My desire.
20            THE COURT:   Thank you.
21            Your plea agreement is under one of our rules called
22   rule eleven C one C.  I want to make sure you understand what
23   that means, and the best way is simply to read the explanation
24   in your plea agreement.   So listen.
25            If the terms of the plea agreement are not accepted
```

```
1    by the Court, then the defendant will be allowed to withdraw
2    the defendant's plea of guilty and will proceed to trial.  In
3    other words, if the judge assigned to your case to sentence
4    you, Judge Watkins, decides not to go along with what's been
5    recommended for you, he will give you a chance to take back
6    your plea of guilty.  And with your lawyer's advice, you can
7    then decide to go forth to trial.  Is that clear?
8    A.  Yes, ma'am.
9              THE COURT:  You will be pleading guilty, Mr. Yates,
10   to what's called a felony.  A felony is a serious crime for
11   which you consent to prison for more than a year.  When you
12   plead guilty to a felony, you lose some rights that many people
13   consider to be valuable civil rights.  Such as the right to
14   vote, the right to hold public office, the right to serve on a
15   jury and the right to have in your possession at any time any
16   kind of firearm.  Is that clear to you?
17   A.  Yes, ma'am.
18             THE COURT:  Right now you're charged under Section
19   nine twenty-two G one of Title Eighteen of the United States
20   Code.  Here is the maximum punishment required by that statute:
21   Not more than ten years, not more than two hundred fifty
22   thousand dollars.  The judge has the authority to send you to
23   prison and order you to pay money as a fine.  Not more than
24   three years on supervised release.  One hundred dollars as an
25   assessment fee.
```

1          Now supervised release is a period of time spent
2     under strict supervision by the probation office which tells
3     you what you can do and what you can't do.  If you violate a
4     term set for you, understand today that the punishment might
5     include time in prison.  Clear?
6     A.   Yes, ma'am.
7          THE COURT:  Realize too, Mr. Yates, that you are in
8     federal court, not state court, and in federal court you cannot
9     expect parole.  If you receive any time, you should expect to
10    spend all of that time in prison.
11         Let me call to your attention, as well, page five of
12    your plea agreement.  The fact that you are giving up the right
13    to take an appeal from this trial court to a higher court after
14    your conviction and your guilty plea is part of the record.
15    You are also giving up the right to challenge your conviction
16    or your guilty plea or your sentence in this Court.
17    Understood?
18    A.   Yes, ma'am.
19         THE COURT:  There are some exceptions that
20    principally relate to whether or not your lawyer has been
21    effective, or whether the Government's lawyer has engaged in
22    some misconduct.  But the details are there at page five and
23    page six of your agreement.
24         This is an appropriate time for me to remind you that
25    you stand before the Court presumed innocent because you have

1    pled not guilty.  On your plea of not guilty it is the duty or
2    burden of the United States to prove your guilt beyond a
3    reasonable doubt before a jury.  At a jury trial you have the
4    right to be present so that you can see and hear all the
5    witnesses against you.

6         You have the right to the continued competent
7    representation of a lawyer like Mr. Bethel, whether or not you
8    could afford to hire him and pay him for his services.  He
9    would have the duty and the right to cross examine witnesses
10   brought against you, and if there are witnesses you believe
11   would be helpful for you, the Court would be sure that they
12   were brought in to court for that purpose.  Understand, though,
13   that you don't have to bring in a single witness.  Nor do you
14   have to testify.  It is your choice under the *Constitution* to
15   testify or not to testify.  However, you made the choice, your
16   decision could not be used against you in any kind of way.
17   These are rights guaranteed when you stand on your plea of not
18   guilty and go forth to trial.

19        If you proceed today to change your mind and plead
20   guilty, you will not have a trial and, thus, you will not have
21   any of those rights I've just told you about.  Is that clear?
22   A.  Yes, ma'am.

23        THE COURT:  If the United States took this case to
24   trial before a jury, the only way it could get a conviction is
25   by presenting proof beyond a reasonable doubt that you had a

1    firearm in or affecting interstate commerce in your possession,

2    and you knew you had it in your possession as charged.  That's

3    the first thing they would have to prove.

4         The second thing that must be proven by the United

5    States is that before you had that gun in your possession, you

6    had already been convicted of a felony.  And a felony, let me

7    remind you, is a crime that could send you to prison for more

8    than a year.  Clear?

9    A.  Yes, ma'am.

10        THE COURT:  Now the Court needs to be sure that the

11   United States would be able to prove that you had a firearm in

12   your possession as they charge in this indictment, even though

13   you have been convicted of a felony.  I need for you now to

14   tell me if you had been convicted before two thousand five of

15   any crime which carried with it one year or more in jail or

16   prison as punishment.

17   A.  Yes, ma'am.

18        THE COURT:  Tell me what you remember about that

19   conviction.  When it occurred and where.

20   A.  It occurred on trial, possession of a controlled substance.

21   I don't know when.

22        THE COURT:  Was that here in Montgomery County?

23   A.  Yes, ma'am.

24        THE COURT:  Possession and receipt of a controlled

25   substance?

```
 1    A.   Yes, ma'am.  Around two thousand three.
 2             THE COURT:  Around two thousand three?
 3    A.   Yes, ma'am.
 4             THE COURT:  All right.  The Court finds that that is
 5    a felony under state law which is punishable by more than a
 6    year.
 7             Now tell me what happened on November sixth, two
 8    thousand five when you had some run-in with the Montgomery
 9    police officer, that is what was found in your possession.
10    A.   I was at the Padlock Club.
11             THE COURT:  Padlock Club Apartments?
12    A.   Yes, ma'am.
13             THE COURT:  That's located in Montgomery?
14    A.   Yes, ma'am.
15             THE COURT:  What happened?
16    A.   The police pulled up and I jumped out and ran.
17             THE COURT:  And did they apprehend you?
18    A.   Yes, ma'am.
19             THE COURT:  When they found you and apprehended you,
20    did they find anything in your possession that shouldn't have
21    been.
22    A.   They found two firearms in the car that I were driving.
23             THE COURT:  Was one a black Beretta nine millimeter
24    assault rifle?
25    A.   Yes, ma'am.
```

```
 1              THE COURT:  Is there a stipulation by counsel that
 2    this weapon is one which qualifies as affecting interstate
 3    commerce?
 4              MR. BETHEL:  Yes, Your Honor.
 5              THE COURT:  Thank you very much.
 6              Does the United States desire to probe any further?
 7              MS. REDMOND:  No, ma'am.
 8              For the record, the defendant had been convicted
 9    under case P. C. oh three six forty in Montgomery County,
10    Alabama of that felon in possession and receipt of a controlled
11    substance.
12              THE COURT:  Thank you very much.
13              Mr. Yates, we're getting down to the point when the
14    Court is going to ask you to change your plea.  Before I do
15    that, I want to give you an opportunity to ask me any question
16    if there is something that's been said that just isn't clear to
17    you, or if you have any lingering question about this plea
18    agreement.
19    A.  I don't have any questions, Your Honor.
20              THE COURT:  Thank you Mr. Yates.
21              Are you now ready, then, to enter a change to your
22    plea?
23    A.  Yes, ma'am.
24              THE COURT:  How do you how plead to count two of the
25    indictment?
```

```
1    A.   Guilty.

2              THE COURT:   Your plea of guilty is now a part of the

3    record.   The Court is satisfied from your responses and

4    therefore makes this finding in your case, Mr. Walter

5    Armadrashad Yates.   The Court finds that you are fully

6    competent and capable of entering an informed plea; that you

7    are aware of the nature of the charges and consequences of the

8    plea; and that your plea of guilty to count two of the

9    indictment is a knowing and voluntary plea supported by an

10   independent basis in fact containing each of the two essential

11   elements of the offense charged, being a felon in possession of

12   a firearm.

13             Therefore, to the extent of this Court's authority as

14   a magistrate judge, your plea is now accepted and you are

15   referred to District Judge Keith Watkins for final review and

16   judgment on your plea.

17             The probation office will now do that *Presentence*

18   *Report*, the background investigation I described earlier,

19   probing into your family history, your criminal history if any,

20   your job history, any facts that are going to be relevant to

21   your sentence.   You may be asked to give information for that

22   report, and you have the right to insist that your lawyer be

23   present.   You and your lawyer will see the report because it

24   will be in writing.   If there are some misstatements in the

25   report or other matters which need to be objected to, your
```

```
 1    lawyer will make the proper objection and will be heard.
 2            Before Judge Watkins sentences you in sixty to ninety
 3    days, or seventy to ninety days, he will give you and your
 4    lawyer a chance to say anything you'd like to before you're
 5    sentenced.
 6            Now this Court needs to make a decision, having
 7    received your guilty plea to a felony, whether you should
 8    remain on pretrial release until your sentencing, or whether
 9    releasing you would pose some danger to the community.  For
10    this purpose the Court is now reviewing the recommendation of
11    the probation officer.  The Court is pleased to note,
12    Mr. Yates, that you have complied with all the conditions we
13    set for you back in July.  And the recommendation of the
14    probation officer is that you be continued on the same
15    conditions of release.
16            Does the United States wish to be heard?
17            MS. REDMOND:  No, Your Honor.
18            THE COURT:  Then the Court will accept the
19    recommendation of the probation officer, Mr. Yates, and allow
20    you to go home today and resume whatever you were doing that's
21    lawful and remain free until you are sentenced.  If you have
22    any question about those conditions, do not hesitate to ask the
23    probation officer who is in court today.
24            Anything else from either party?
25            MS. REDMOND:  Not on behalf of the United States.
```

1        MR. BETHEL:  No, Your Honor.

2        THE COURT:  Thank you.  Good luck to you, Mr. Yates.

3        (Whereupon, the proceedings were concluded.)

4                    * * * * * * * *

5

6              COURT REPORTER'S CERTIFICATE

7

8

9     I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled

11   matter as prepared by me to the best of my ability.

12

13     I further certify that I am not related to any of

14   the parties hereto, nor their counsel, and I have no

15   interest in the outcome of said cause.

16

17     Dated this 14th day of February 2008.

18

19

20                         \s\ Mitchell P. Reisner, CM, CRR
                           **MITCHELL  P.  REISNER,  CM,  CRR**
21                         Official US Dist. Court Reporter
                           Registered Professional Reporter
22                         Certified   Real-Time   Reporter

23

24

25

```
1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE MIDDLE DISTRICT OF ALABAMA

3                          NORTHERN DIVISION

4

5    UNITED STATES OF AMERICA

6         vs.                    CASE NO.:  2:06cr168-WKW

7    WALTER ARMADRASHAD YATES,

8         Defendant.
```

A0888-C
GOVERNMENT
EXHIBIT

CASE
NO. 2:08cv66

EXHIBIT
NO.   D

```
11              *  *  *  *  *  *  *  *  *  *  *

12                      SENTENCING HEARING

13              *  *  *  *  *  *  *  *  *  *  *

14

15          BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

     DISTRICT JUDGE, at Montgomery, Alabama, on Thursday, May 10,
16
     2007, commencing at 2:19 p.m.
17
     APPEARANCES:
18
     FOR THE GOVERNMENT:       Ms. Tommie Brown Hardwick
19                             Mr. John T. Harmon
                               Assistant United States Attorneys
20                             OFFICE OF THE UNITED STATES ATTORNEY
                               131 Clayton Street
21                             Montgomery, Alabama   36104

22   FOR THE DEFENDANT:        Mr. Donnie Wayne Bethel
                               FEDERAL DEFENDERS
23                             MIDDLE DISTRICT OF ALABAMA
                               201 Monroe Street, Suite 407
24                             Montgomery, Alabama   36104

25            Proceedings reported stenographically;
                transcript produced by computer.
```

```
 1                    EXAMINATION INDEX

 2   TONI HICKS YATES
         DIRECT BY MR. BETHEL                 29
 3
     FLOYD LEE STINSON
 4       DIRECT BY MR. BETHEL                 33

 5                     EXHIBIT INDEX

 6   GOVERNMENT'S EXHIBIT NO.:        OFFERED    ADMITTED

 7    1    Proffer letter                20         28

 8    3    Affidavit of John Poti        24         28

 9    4    Certified conviction          12         13

10                   * * * * * * * * * * *

11        (The following proceedings were heard before the Honorable

12        W. Keith Watkins, United States District Judge, at

13        Montgomery, Alabama, on Thursday, May 10, 2007, commencing

14        at 2:19 p.m.:)

15        (Call to Order of the Court)

16            THE COURT:  You may be seated.  We're here today for

17   the sentencing of Walter Armadrashad Yates in 06-168.  Is the

18   government ready?

19            MS. HARDWICK:  Yes, Your Honor.  Good afternoon.

20            THE COURT:  Okay.  Would you enter your appearance for

21   the record, please.

22            MS. HARDWICK:  Tommie Hardwick on behalf of the

23   government.

24            THE COURT:  Good afternoon.

25            MS. HARDWICK:  Good afternoon, Your Honor.
```

3

1    THE COURT: And is the defendant ready?
2    MR. BETHEL: Yes, Your Honor. Don Bethel on behalf of
3 Mr. Yates.
4    THE COURT: Okay. Would you introduce me to your
5 client, please.
6    MR. BETHEL: Yes. This is Walter Yates, Your Honor.
7    THE COURT: Good afternoon.
8    THE DEFENDANT: How you doing?
9    THE COURT: All right. Would you-all approach the
10 podium, please, Mr. Bethel.
11    MR. BETHEL: Yes, Your Honor.
12    THE COURT: There appears to have been a plea agreement
13 reached in this case. Would the government please state the
14 terms of the plea agreement.
15    MS. HARDWICK: Yes, Your Honor. Your Honor, this is
16 pursuant to an 11(c)(1)(C) plea agreement in which the
17 government agreed to recommend the low end of the guidelines
18 with a plea to count two of the indictment, which is the only
19 charge that Mr. Yates is charged in, provided that Mr. Yates'
20 criminal history does not exceed the category of II. And it
21 also included a substantial assistance to the government.
22    The government agreed to give Mr. Yates the -- that he
23 should receive the two-level reduction for acceptance of
24 responsibility. In addition, the government filed a motion
25 pursuant to 3E1.1(b) for the additional point for the

4

1 government. And the government would state for the record he
2 also agreed to waive appeal and collateral attack in the plea
3 agreement.
4    THE COURT: You used the word "substantial
5 assistance." I didn't see that.
6    MS. HARDWICK: Your Honor, that was in the plea
7 agreement, that should he provide substantial assistance, that
8 the government would file a motion --
9    THE COURT: But there is no motion on substantial --
10    MS. HARDWICK: There is no motion in this case.
11    THE COURT: Okay. Mr. Bethel, is that your
12 understanding of the plea agreement?
13    MR. BETHEL: Yes, Your Honor. And I would note that in
14 addition to the objection that I filed with the probation
15 officer previously, I have been negotiating with Ms. Hardwick
16 right up until yesterday concerning whether there would be a
17 motion for a downward departure based on Mr. Yates' substantial
18 assistance. I believe there should be a motion for substantial
19 assistance in this case, and that's something that I believe the
20 Court will need to resolve.
21    THE COURT: Okay. Well, the plea is pursuant to
22 11(c)(1)(C). The Court accepts the plea agreement. And I'll
23 resolve whatever might be pending there.
24    Mr. Yates, have you and your attorney reviewed the
25 presentence report?

5

1    THE DEFENDANT: Yes, sir.
2    THE COURT: All right. Do you-all have any objections
3 to the content of the report?
4    MR. BETHEL: Yes. The objection that we filed earlier
5 with the probation officer, and that's concerning the
6 enhancement pursuant to 3A1.2(c)(1).
7    THE COURT: Do you wish to put on any evidence, or do
8 you just want to argue it?
9    MR. BETHEL: Yeah. And at the same time, I would
10 object to any facts in the presentence investigation report that
11 would -- that would support that particular enhancement.
12    THE COURT: Okay. Do you wish to put on evidence?
13    MR. BETHEL: No. I'd like to make a simple -- a very
14 simple, straightforward argument about that, Your Honor.
15    THE COURT: Go right ahead.
16    MR. BETHEL: I would note that in the original
17 presentence investigation report that Ms. Traywick compiled and
18 provided to the parties that she did not include an enhancement
19 pursuant to 3A1.2(c)(1). She did include an enhancement for
20 reckless endangerment, which would be a two-level enhancement as
21 opposed to the six-level enhancement under 3A1.2(c)(1).
22    And I would simply point the Court to the plain
23 language of 3A1.2(c)(1). It says if, in a manner creating a
24 substantial risk of serious bodily injury, the defendant or a
25 person for whose conduct the defendant is otherwise accountable,

6

1 knowing or having reasonable cause to believe that a person was
2 a law enforcement officer, assaulted such officer during the
3 course of the offense or immediate flight therefrom, increase by
4 six levels.
5    Now, the question is -- I would concede the point in
6 this case that Mr. Yates did assault the officer. One of the
7 things that's mentioned in the report is that Mr. Yates did
8 strike the officer on the arm. That, in my opinion, is not an
9 aggravated assault. And the reason that's important, Your
10 Honor, is because if you look at the commentary, application
11 note four specifically says concerning the application of
12 subsection (c), in general, subsection (c) applies in
13 circumstances tantamount to aggravated assault against a law
14 enforcement officer.
15    So we have to have two things. We have to have the
16 defendant acting in a manner creating a substantial risk of
17 serious bodily injury, and we have to have the assault of a law
18 enforcement officer. We also do not dispute that Mr. Yates knew
19 that the officer was in fact a law enforcement officer. The
20 officer identified himself as such, and that is not an issue.
21    So the only two predicate elements that are at issue,
22 in our opinion, is whether Mr. Yates acted in a manner that
23 created a substantial risk of serious bodily injury and whether
24 he assaulted the officer in a manner that was tantamount to an
25 aggravated assault.

**7**

1     Well, there's no definition in this particular
2 sentencing provision concerning aggravated assault, but it does
3 reference that we should look at the definition of aggravated
4 assault that's contained elsewhere in the guidelines. And the
5 definition of aggravated assault under 2A2.2 -- and that is
6 titled Aggravated Assault -- application note one, definitions,
7 aggravated assault means a felonious assault that involved a
8 dangerous weapon with the intent to cause bodily injury with
9 that weapon or serious bodily injury or an intent to commit
10 another felony.
11     There's been no suggestion that Mr. Yates was in the
12 process of attempting to commit or intending to commit another
13 felony. There is no evidence that the officer received any
14 injuries, much less serious bodily injury.
15     So the remaining question is was this a felonious
16 assault that involved a dangerous weapon with the specific
17 intent to cause bodily injury. There's no evidence of that in
18 the facts in the presentence investigation report. And in fact,
19 anything that would suggest that, we would object to that. And
20 we would expect the government to have to support that through
21 some testimony or evidence before the Court.
22     In my opinion, Your Honor, it's just that simple. If
23 you simply read the language of the sentencing guidelines,
24 follow the -- and connect the dots, this was not a felonious
25 assault. This was, as Ms. Traywick said in her original report,

**8**

1 which I believe she got correct, simply reckless endangerment.
2     And I would note for the Court that in the presentence
3 investigation report that is substantiated by the fact that in
4 November of 2005 -- and that's when this conduct occurred, was
5 in November of 2005; it's a month -- it's a year and a half
6 old -- that Mr. Yates pled guilty to reckless endangerment.
7 This is paragraph 29 of the presentence investigation report.
8 He pled guilty in the district court of Montgomery, Alabama, to
9 reckless endangerment, not assault on a law enforcement officer,
10 not aggravated assault. He pled guilty to, was convicted of,
11 reckless endangerment.
12     For all of those reasons, Your Honor, I believe that
13 this enhancement is incorrect and that the original enhancement
14 that was identified by Ms. Traywick, two-level enhancement for
15 reckless endangerment, is what's appropriate in this case.
16     THE COURT: Ms. Hardwick?
17     MS. HARDWICK: Your Honor, the government does
18 reference Government's Exhibit 4 we would tender to Mr. Bethel
19 and to the Court, which is a certified conviction of the
20 reckless endangerment. But it also contains the sworn affidavit
21 of Officer Clark, who describes the conduct. This was not a
22 trial. This was a guilty plea, as just stated by Mr. Bethel, by
23 his client. It's charged under the original name that Mr. Yates
24 gave, which is Dominic Jermaine Henderson, which was found to be
25 the same person, Mr. Yates in this case.

**9**

1     It is correct, as Mr. Bethel stated, a reckless
2 endangerment conviction. However, in that reckless endangerment
3 commit -- reckless endangerment conviction that he entered a
4 guilty plea to, the sworn affidavit of the officer -- and this
5 is a certified copy of that conviction from the district court
6 here in Montgomery County -- that the officer stated in there
7 that the defendant did put his car in reverse, that he drove off
8 with him hanging into the car, that he hit his arm attempting to
9 get away from him, which is the kind of language that is
10 described in 3A1.2 where the person -- in a manner creating
11 substantial risk of serious bodily injury. This is a car that
12 is in reverse with the officer hanging on inside of it being hit
13 by the defendant as he is speeding in the reverse of the car. I
14 think the Court and parties present can take judicial notice
15 that an automobile has consistently been deemed a dangerous
16 weapon when driven in that fashion, which created the
17 substantial risk.
18     The fact that his conviction was not an assault -- the
19 Alabama Code refers to an attempted assault as well as the
20 definition of the reckless endangerment, which includes the same
21 language. The reckless endangerment definition under the
22 Alabama Code at 13A-6-24 states that a person commits the crime
23 of reckless endangerment if he recklessly engages in conduct
24 which creates a substantial risk of serious physical injury to
25 another person. It's the same language that is being used in

**10**

1 the United States sentencing guideline. The only thing that
2 Mr. Bethel is relying on is the assault of such officer during
3 the course of the officer -- or the offense or the immediate
4 flight therefrom.
5     The reference in the Alabama Code refers to -- at
6 commentary note three, that under the criminal code, that a
7 person can be charged with the attempted assault. The only
8 distinction that the Alabama Code makes between an assault
9 first, second, and third is the physical injury that is required
10 versus the hitting. At one time, it was described as just a
11 physical contact. The law was changed.
12     But the efforts that Mr. Yates committed against
13 Officer Clark did make physical contact with his arm each time
14 he hit him, and it did create a risk of substantial serious
15 physical injury by the manner in which he drove the car. So the
16 government submits that the conduct there -- the word
17 "tantamount" doesn't mean that it has to be. It's similar to or
18 amounts to. Reading that in conjunction with the definitions of
19 the Alabama Code of reckless endangerment, which carries some of
20 the same language as the United States sentencing guideline in
21 describing when that conduct does apply -- and the government
22 would submit that this is a scenario where he well knew and they
23 have not disputed that this was a law enforcement officer at the
24 time that he created the danger for him and struck him as he
25 tried to get away from the offense.

11

1    THE COURT: Thank you. Anything further, Mr. Bethel?
2    MR. BETHEL: Well, I would simply note for the Court
3 that the language is exactly the same from 3C1.2 and 3A1.2(c)(1)
4 where it talks about creating a substantial risk of death or
5 serious bodily injury in 3C1.2 and in 3A1.2(c)(1), substantial
6 risk of serious bodily injury.
7    What is the key difference between those two
8 provisions? The key difference is there must be an actual
9 assault; and according to the application note, that must be an
10 assault that's tantamount to an aggravated assault. I did find
11 one Eleventh Circuit court, *U.S. versus Gonsalves*,
12 G-O-N-S-A-L-V-E-S, in which this enhancement was applied. And
13 that was a case where someone driving a car actually ran into
14 drug -- I believe it was drug enforcement agents in that
15 particular case.
16    I would note that based on what I've seen -- and again,
17 we don't concede any of the facts in the presentence
18 investigation report that would support this. I have not seen
19 the affidavit that Ms. Hardwick has cited. And I would
20 simply -- I would simply say that there certainly -- there has
21 been no indication that there was what could be in any way
22 described as an aggravated assault in this case. There's
23 absolutely no evidence that an officer sustained any bodily
24 injury whatsoever.
25    I would also note that it appears to be that the

12

1 officer did not reach into the car until after Mr. Yates put the
2 car in reverse and tried to back up. So this was not a case
3 where the officer had already reached into the car. It was a
4 case where the officer actually placed himself in harm, if
5 that's what happened, by reaching into the car after the car was
6 already moving.
7    MS. HARDWICK: Your Honor, for the record, we would
8 offer Government's Exhibit 4, which is a certified copy of the
9 reckless endangerment conviction. And for the record, Your
10 Honor, that same language and information was provided in
11 discovery to Mr. Bethel, which was the memorandum from Officer
12 Clark as well as a summary of the events that happened on the
13 date of the offense.
14    THE COURT: That's the same summary that appears in the
15 presentence report, too; is that correct?
16    MS. HARDWICK: That is correct, Your Honor.
17    THE COURT: Mr. Bethel, do you have any objections?
18    MR. BETHEL: I do object to that affidavit, Your
19 Honor. It's hearsay. I know the rules of evidence don't apply
20 at this sentencing hearing because this is not a trial.
21 Nonetheless, Mr. Clark could have certainly been called --
22 Officer Clark could have certainly been called by the government
23 to support any factual determinations they would like for the
24 Court to reach concerning the arguments they've made in
25 opposition to the objection that I've raised.

13

1    THE COURT: Okay. Your objection is overruled on the
2 grounds stated, and it will be admitted into the record.
3    Ms. Hardwick, would you bring that to Ms. Roy, please?
4 Thank you.
5    Okay. Having heard your argument, the Court has looked
6 at the definition of aggravated assault, first. And following,
7 as you said, connecting the dots, the specific offense
8 characteristic of aggravated assault is that a dangerous weapon
9 was otherwise used, and the Court takes judicial notice of the
10 fact that automobiles have been considered to be dangerous
11 weapons for many years. And so it does not require injury, just
12 mere -- that there was some use.
13    Also, the Court notes that 13A-6-24 of the Alabama Code
14 to which he pled guilty, Mr. Yates pled guilty, also references
15 a substantial risk of serious physical injury. It does not
16 require an injury, but the risk of that. And we're operating
17 here under the language that says substantial risk of a serious
18 bodily injury.
19    So based upon that, the Court finds that this was --
20 did create on behalf of an officer a substantial risk of serious
21 bodily injury. The Court takes a very dim view of anyone
22 fleeing a police officer, much less doing it with a vehicle when
23 the officer is trying to stop the vehicle. And so it matters
24 not to the Court whether the officer had his hand in there
25 before or after the gearshift lever was in reverse. Mr. Yates

14

1 should have complied with the lawful commands of the police
2 officer.
3    Are in there any other objections?
4    MR. BETHEL: Yes, Your Honor. The objections I would
5 have to your ruling are that there is absolutely no indication
6 that Mr. Yates drove the car toward the officer. Obviously,
7 that's not a prerequisite. But lacking that, under the
8 circumstances, I would say there is no factual basis to support
9 that it was actually operated in a manner that was likely to
10 cause substantial bodily injury or death. We've had no
11 testimony about how fast the car was driven. We've had no
12 testimony about how far the car was driven. We've had no
13 testimony whatsoever to substantiate that it was in fact
14 operated in a manner that was likely to cause serious bodily
15 injury or death. I do not believe we can simply conclude,
16 absent any facts, on the bear assertion that merely because the
17 car was in motion, it therefore represented a substantial -- the
18 risk of substantial bodily injury or death. I don't think that
19 it's a -- there's a sufficient factual basis for the Court to
20 conclude that the enhancement, as stated, should apply.
21    THE COURT: Having reviewed exhibit -- Government's
22 Exhibit 4, which has been admitted into evidence, the officer
23 said under oath, I then turned back to Mr. Henderson and asked
24 if he had any identification. He then put his car in reverse,
25 as if he were about to drive off. I reached in the window and

15

1  attempted to grab his keys. Mr. Henderson then began to hit my
2  arms and drove in reverse while I was holding on to the steering
3  wheel. He then stopped the car and put it in drive. I
4  repeatedly told him to stop the car. Again, he accelerated.
5  Mr. Henderson turned the wheel to the right towards the exit of
6  the parking lot. I turned the wheel back to the left, causing
7  the vehicle to go back into the lot. I continued to tell
8  Mr. Henderson to stop the car. I then grabbed the gearshift and
9  put the car in park, causing him to come to a sudden stop.
10  Mr. Henderson then opened the driver's side door and hit me with
11  it.
12       Okay. Your objection to the presentence report and the
13  factual basis for this finding is overruled. The six-level
14  enhancement will apply under 3A1.2(c)(1).
15       Are there any other objections?
16       MR. BETHEL: The only other issue to be resolved, Your
17  Honor, is whether or not Mr. Yates should be given credit for
18  substantial assistance.
19       THE COURT: Okay. Let's approach, if you would.
20  (Bench conference proceedings filed under seal pursuant to
21      order of the Court)
22
23
24
25

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

28

8  THE COURT: Okay. Are there any other objections,
9  Mr. Bethel?
10  MR. BETHEL: No objections, Your Honor, other than what
11  we've just discussed at side-bar. I would say this. I consider
12  the prosecutor's refusal to file the downward departure that
13  we've just discussed a breach of the plea agreement. I seek to
14  withdraw on Mr. Yates' behalf from the plea agreement. I intend
15  to appeal both the Court's ruling and the prosecutor's failure
16  to give him the credit that he deserves for his cooperation.
17  THE COURT: Motion to withdraw is denied. Anything
18  else?
19  MR. BETHEL: No, Your Honor.
20  THE COURT: Okay. Having made findings as to the
21  objections to the presentence report, the Court finds, after
22  consultation of *U.S. v. Booker* -- and while the Court is not
23  bound to apply the guidelines, it has consulted them and has
24  taken them into account on the issue of the appropriate range of
25  sentence to be imposed in this case. The Court finds that the

29

1  offense level is 23, the criminal history category is I, the
2  guideline range is from 46 months to 57 months, the supervised
3  release period is from two years to three years, and the fine
4  range is from 10,000 to $100,000.
5  Mr. Yates, do you or your attorney have anything to say
6  in mitigation or otherwise before the Court pronounces sentence
7  in this case?
8  MR. BETHEL: Yes, Your Honor. We have witnesses to
9  call at this time that we'd like the Court to hear from.
10  THE COURT: Okay. Call your first witness.
11  MR. BETHEL: Call Ms. Yates to the stand, Your Honor.
12  THE COURT: Okay.
13  THE CLERK: Ma'am, right here. Raise your right hand.
14  (The witness is sworn)
15  THE CLERK: Have a seat right there, please.
16  THE COURT: Good afternoon.
17  THE WITNESS: Good afternoon, sir.
18  **TONI HICKS YATES**, the witness, having been duly sworn,
19  testified, as follows:
20  DIRECT EXAMINATION
21  BY MR. BETHEL:
22  Q. Ma'am, please state your full name and spell your first and
23  last names.
24  A. Toni Hicks Yates. That's T-O-N-I, Y-A-T-E-S.
25  Q. Ms. Yates, are you married to Walter Yates?

30

1  A. Currently, we're divorced.
2  Q. Do you live with Walter Yates?
3  A. Yes, I do.
4  Q. And how long have you lived together?
5  A. For the last four years.
6  Q. Ma'am, who lives with you and Walter?
7  A. Myself, Walter, and two kids, my son Rodney Hicks and
8  Willard Johnson.
9  Q. Are those children Mr. Yates' children?
10  A. They're mine from a previous relationship.
11  Q. Does Mr. Yates provide any support for those children?
12  A. Yes, he does. He provides half of the support.
13  Q. In what way?
14  A. He pays the rent, utilities, and food.
15  Q. Would you say that he's a father figure to your children?
16  A. Yes. He is the only father figure -- not the only, but the
17  major father figure in their lives. They do know their father,
18  but he's the only one that's with them at this time.
19  Q. And how would you describe the way that Mr. Yates relates to
20  your children?
21  A. Well, I guess -- he's pretty much their everything,
22  fatherwise. He's the one that takes time with them when it's
23  time to go places. When he's not working, he's the one we look
24  forward to going to trips on weekends and going to the park.
25  When it's time to barbecue, he's the one to fire up the grill.

31

1   So he -- he is daddy at home.
2   Q. And what kind of a figure is he in the rest of his family,
3   his extended family?
4   A. Well, he is pretty much the only male role model and father
5   figure that we all know in his mother's life, his sister's life,
6   as well as in my family life. My nephew, whose father was
7   killed two years ago, DeAnthony, he's Uncle Duke, and he's the
8   only male role model that he's had. My brother who's over in
9   Iraq, his two girls look up to him, seeing him as Uncle Duke.
10  He's the only male that pretty much come around. And during
11  family functions, he's pretty much the only one that's there.
12  Q. Ms. Yates, have you talked about this case with Walter?
13  A. We -- we pretty much try to live a normal life. We don't
14  ignore the case. We pretty much lately have been trying to make
15  arrangements to carry on if he's not at home. We've just been
16  pretty much trying to get bills and things kind of financially
17  situated. But we've just pretty much been trying to live a
18  normal life.
19  Q. Have you talked to him about how he feels about what he's
20  done?
21  A. Yes, I have discussed the issue with him. He's very
22  remorseful about what happened. And I know at this point in
23  time, if he could turn back the hands of time, he would not have
24  been in that place or in that situation.
25  Q. How does he feel about the impact this is going to have on

32

1   you and your children?
2   A. At this point in time, I mean he's very hurt. And I guess
3   he's just pretty much looking forward to me trying to stand up
4   and be the person trying to take charge and take on the
5   household, take on the bills, and raise the kids by myself.
6   Q. And how do you intend to do that while he's gone?
7   A. Well, continue to work. I guess pick up a second job. And
8   I'm trying to get through with school at this point. I graduate
9   in September, so I'm just trying to maintain and pray and keep
10  my head on straight.
11  Q. You said you're going to school?
12  A. Yes, sir.
13  Q. And where?
14  A. I'm attending Faulkner University.
15  Q. What's your major?
16  A. Management of Human Resources.
17  Q. When do you plan to graduate?
18  A. This September. 2007.
19  Q. After Walter is released from prison, do you intend to be a
20  family again?
21  A. Yes, I do.
22  Q. What kind of an impact is this really going to have on you
23  and your children while Walter is locked up in prison?
24  A. I really don't know. I really haven't discussed it with
25  them at all. So I'm just going to have to pretty much tell them

33

1   why he's not at home anymore. So I haven't discussed it with
2   them, period.
3        MR. BETHEL: No further questions, Your Honor.
4        MS. HARDWICK: No questions from the government, Your
5   Honor.
6        THE COURT: Okay. Thank you, Ms. Yates. You may step
7   down.
8        MR. BETHEL: Call Floyd Stinson.
9        (The witness is sworn)
10       THE CLERK: Thank you.
11       THE COURT: Good afternoon.
12       THE WITNESS: How are you doing?
13       **FLOYD LEE STINSON**, the witness, having been duly
14  sworn, testified, as follows:
15                DIRECT EXAMINATION
16  BY MR. BETHEL:
17  Q. Sir, please state your full name and spell your first and
18  last name.
19  A. Full name is Floyd Lee Stinson, F-L-O-Y-D, S-T-I-N-S-O-N.
20  Q. Mr. Stinson, do you know Walter Yates?
21  A. Yes, I do.
22  Q. Sir, how do you know him?
23  A. He's one of my employees at Thermalex in Gunter Park.
24  Q. Where is it you work, sir?
25  A. Thermalex in Gunter Park.

34

1   Q. How long have you been employed there?
2   A. I have been employed there 20 years.
3   Q. What do you do there, sir?
4   A. I'm one of the managers in the extrusion department.
5   Q. In your position as a manager, do you supervise any
6   personnel?
7   A. Yes.
8   Q. How many?
9   A. Currently, I have maybe 89 employees.
10  Q. Over the course of your 20-year career there at Thermalex,
11  how many folks would you say you've supervised during that
12  period of time, just an -- just an estimate.
13  A. Oh, maybe about 300.
14  Q. How long has Walter worked for you?
15  A. Two years.
16  Q. What kind of an employee has he been for you and Thermalex?
17  A. Well, I have -- with Walter, he has been one of the
18  exceptional good employees that we have at Thermalex. One of
19  the things he's capable of doing is we have many different
20  functions at the job operating different type of equipment. And
21  currently, he's one of the head stretcher operators now. And we
22  have saw operators, press operators, and different things. And
23  since Walter's been employed at Thermalex, he have learned maybe
24  seven different jobs at Thermalex in the last two years.
25  Q. How reliable has he been as an employee for you?

35

1  A. Very reliable. We have -- currently now we're working seven
2  days a week. This is one of our busiest season here now because
3  of our customers. And he have been showing up seven days. And
4  if he's late, he'll call and say, I'm five, ten minutes late,
5  everything. But currently now, he's been there. One of the
6  dependable employees that we have.
7  Q. How would you describe his -- his attributes as an employee
8  for you?
9  A. One -- one of the things he -- with his coworkers, he
10  encourages them to come to work and, you know, try to do their
11  jobs. And he -- he have been one of the best employees that we
12  have there at Thermalex, one of them, that I have.
13  Q. And out of the 300 or more employees that you've supervised,
14  how would you rank or rate Walter among them?
15  A. On a scale of one to ten, I would rank him right at nine and
16  a half.
17  Q. Is he one of the better employees you've ever had?
18  A. Yes. One of the better. Yes.
19       MR. BETHEL: No further questions, Your Honor.
20       MS. HARDWICK: No questions from the government, Your
21  Honor.
22       THE COURT: Mr. Stinson, do you know what his current
23  rate of pay is?
24       THE WITNESS: I think he's currently making 11 --
25  11.50, $12 an hour.

36

1       THE COURT: Does he work a full 40-hour week?
2       THE WITNESS: Yes. Yes.
3       THE COURT: Okay. Thank you. You may stand down.
4       MR. BETHEL: No further witnesses, Your Honor.
5  Mr. Yates would like to address the Court.
6       THE COURT: Okay. Mr. Yates, come up to the
7  microphone, if you would. Yes, sir.
8       THE DEFENDANT: Yes, sir. My name Walter Yates. I'm
9  very sorry for what happened. If I could, I wouldn't have been
10  in that place. And I think imprisonment isn't the best thing
11  for me. It won't do nothing but hurt me instead of help me.
12  And I hope you take that into consideration.
13       THE COURT: Okay. Mr. Yates, do you have children?
14       THE DEFENDANT: Yes, sir.
15       THE COURT: How many?
16       THE DEFENDANT: I have two of my own and two
17  stepchildren.
18       THE COURT: Okay. You've heard Ms. Toni Yates testify;
19  is that correct?
20       THE DEFENDANT: Yes, Your Honor.
21       THE COURT: And you've heard what effect this is going
22  to have on the family while you're gone; is that correct?
23       THE DEFENDANT: Yes, Your Honor.
24       THE COURT: The Court is concerned about that, but the
25  Court is also concerned about the safety of our law enforcement

37

1  officers around here and is concerned that you were keeping some
2  pretty rough company this occasion. And keeping bad company
3  usually results in bad things. Do you understand that?
4       THE DEFENDANT: Yes, Your Honor.
5       THE COURT: Okay. Whatever time I give you -- and I'm
6  going to have to give you time -- what's going to be your plan
7  when you get out?
8       THE DEFENDANT: Well, hopefully, I can go back to my
9  same job and take care of my family.
10       THE COURT: Okay. All right. Is there anything
11  further, Mr. Bethel?
12       MR. BETHEL: Just a brief argument, Your Honor.
13       THE COURT: Go ahead.
14       MR. BETHEL: So we've come to the point now, Your
15  Honor, where you must determine -- or the Court must determine
16  what is an appropriate sentence in this case. And I would note
17  just how substantially two particular enhancements under the
18  guidelines have really impacted the sentencing guidelines in
19  this case. Advisory. Advisory sentencing guidelines.
20       The first of those is the fact that the gun in question
21  would accept a clip greater than 15 rounds. That it would hold
22  greater than 15 rounds of ammunition resulted in a full
23  six-level increase from level 14 of the guidelines to level 20.
24  The other enhancement, as we've discussed in detail, is the
25  enhancement from 3A1.2(c)(1), which has resulted in another

38

1  six-level increase.
2       So we've gone from a base offense level of 14, which
3  is 15 to 21 months, to a base offense level of 26, which is 63
4  to 78 months. I find it rather ironic, Your Honor, that when
5  you look at the base offense level prior to acceptance of
6  responsibility, fully 75 percent of the guideline sentencing
7  range in this case is due to those two enhancements and not to
8  the base offense level. Seventy-five percent. If you look at
9  what would have been the level from base level 14, with
10  acceptance, level 12; in zone C, ten to 16 months; with the
11  enhancements we're at level 23, 46 to 57 months. Ten to 16
12  versus 46 to 57, the base offense level compared to the offense
13  level with enhancements.
14       And that's, in my opinion, Your Honor, the greatest
15  problem with the guidelines. That's what I would call the
16  vagary of the sentencing guidelines, is that to the Sentencing
17  Commission, these are just numbers. They're numbers on a
18  matrix. Down one side we have offense level, and across the top
19  of the chart we have criminal history category. Add up the
20  enhancements, subtract for acceptance of responsibility, do the
21  math, put it in a calculator, spit it out, and we have a
22  number. Unfortunately, these numbers don't always add up.
23       And in my opinion, when you have a guideline, resulting
24  guideline, that is fully four times what would otherwise be the
25  base offense level due to two enhancements, it indicates to me

39

1  that the sentencing guidelines and the Sentencing Commission, no
2  matter how diligent, no matter how hard they may have worked to
3  come up with a guideline that they felt accurately reflected
4  what these enhancements should be worth, this is what we end up
5  with. And as a result, we have a young man who's criminal
6  history category is I, who has never been to prison before,
7  who's never received anything more than probation for a minor
8  offense -- we have a young man who is facing 46 to 57 months.
9       I would suggest to you that Mr. Yates is markedly
10 different than many of the defendants who stand before the bar
11 of this Court in the following ways. Mr. Yates lives in a
12 stable home/family relationship with his former wife -- they're
13 divorced but still maintain a family home. They live as husband
14 and wife. He supports not only his own two children from a
15 previous marriage but fully supports and is a father figure to
16 two children with whom he lives.
17      He is gainfully employed. Many, if not most, of the
18 defendants who stand before this Court cannot make such a
19 claim. Certainly they can't make a claim that Mr. Yates can
20 make based upon the testimony of his supervisor, Mr. Stinson,
21 who says that on a scale of one to ten, Mr. Yates is a nine and
22 a half. One of the more reliable employees he's ever
23 supervised, and he's supervised more than 300 people in a
24 20-plus career at Thermalex. It's clear that he thinks
25 incredibly highly of Mr. Yates. He wishes he had more employees

40

1  like him. Mr. Yates is an encouragement to others who work
2  there.
3       And I would suggest to the Court that you're absolutely
4  right, Your Honor, that this is a case of Mr. Yates running with
5  the wrong crowd. Neither of these guns belonged to Mr. Yates.
6  They were brought into that car by someone else. That certainly
7  doesn't excuse his behavior. I'm not suggesting that it does.
8  Mr. Yates knows that it was wrong for him to be in that car with
9  those guns, whether they were his guns or whether they belonged
10 to someone else. He accepted responsibility. He pled guilty in
11 this case.
12      I would simply suggest to the Court that in light of
13 the way we reach this guideline level, that this advisory
14 guideline level is simply too severe in this case. Do we really
15 need to send someone who's going to prison for the first time --
16 do we need to send them to prison for almost four years? Four
17 years for the possession of a firearm. That's what we're going
18 to do if we go with the low end of the guideline range, 46
19 months. How much time does he need to sit and think behind
20 those cell bars day after day, 365 days a year, for him to
21 understand that he made a monumental error in judgment and that
22 he is paying a very significant price? I would suggest to the
23 Court that we don't need to put him there for 46 months for him
24 to understand that.
25      I would suggest to the Court that a far substantially

41

1  lower -- a substantially lesser time would be sufficient to
2  impress upon Mr. Yates what his conduct has cost him, his
3  employer, his family, his children. And that's really what the
4  Court has to do, because now that these are advisory guidelines
5  only, the only question is what is the lowest sentence necessary
6  under 3553(a). What is the lowest sentence necessary to
7  reasonably impart to this defendant and others in society that
8  his criminal wrongdoing won't be tolerated. And I would suggest
9  to the Court that now that we live under an advisory guideline
10 scheme, that 46 months is simply entirely too long.
11      THE COURT: Ms. Hardwick?
12      MS. HARDWICK: Your Honor, Mr. Bethel has argued that
13 the guidelines are advisory. The government agrees with that
14 point. However, the guidelines are written to take certain
15 factors into consideration. Under *United States versus Crawford*
16 and *Booker*, *United States versus Booker*, there is a requirement,
17 first of all, that the guidelines be calculated correctly and
18 accurately. The Court did rule that they are advisory, but
19 Mr. Bethel's argument infers that they shouldn't even be
20 calculated correctly.
21      The government submits that the guidelines have been
22 calculated correctly. The first enhancement where Mr. Yates
23 goes from a level 14 to a level -- base level of 20, that is
24 done because the guideline specifically states that when a
25 firearm is capable of dispensing a large number of bullets or

42

1  pellets without the necessity to reload, therein lies a
2  substantial danger. The danger is heightened for what that
3  firearm could do.
4       Yes, the criminal history of Mr. Yates does show that
5  he is a criminal history category I. But when you look at the
6  things that have happened with the description of the criminal
7  history category, the very first thing was a criminal trespass
8  where Mr. Yates received zero points for criminal history
9  calculation. In that instance, a summary of the facts indicate
10 that he was asked three times to leave a premise after which he
11 pushed a security guard and then stated, I'm not going
12 no-F-ing-where.
13      The second incidence, at age 22, he was found in
14 possession of cocaine. In that instance, he was given two
15 years' confinement. That sentence was suspended. He was placed
16 on one year probation. Therefore, he received only one criminal
17 history point for that offense.
18      The next instance, which is a copartner to the present
19 offense that we've already discussed, was a reckless
20 endangerment. He entered a guilty plea to that offense. He was
21 given six months in jail, again, suspended, two years' fine
22 (sic), zero criminal history points. So even though Mr. Bethel
23 argues that his criminal history point is only level I, that's
24 because in the previous instances that Mr. Yates has been before
25 a court of law he has been given consideration, and he has been

given suspended sentences or a very low sentence for the conduct that he did commit during that time.

In the instant offense, had Officer Clark not responded to a burglary alarm going off at a business where there were two carloads of individuals and two individuals in the car that Mr. Yates was in with his codefendant, Mr. Rollins -- they came to Montgomery with the intent to do further damage. The guideline does not punish him for that. It simply calculates the conduct that did transpire on that evening. So Mr. Yates has been given considerable opportunity from the age of 21 to his present age where the courts that he has appeared before have given him consideration that their sentences were lenient and possibly because he was working.

The government does not dispute or attempt to argue with any of the testimony that was presented by Mr. Bethel. What he's doing for his family the government is not in a position to dispute. But any criminal offense has an impact on any family that's left behind. And those are the decisions that any defendant has to consider prior to committing the offense and not as a hindsight. The government submits that the guidelines have been carefully and correctly calculated in this instance. The government has agreed to recommend the low end of the guidelines, and we stick to that recommendation in this case.

THE COURT: The government also has a motion for the

third point for acceptance of responsibility; is that correct?

MS. HARDWICK: That is correct, Your Honor. We ask the Court to grant that motion.

THE COURT: And the motion will be granted. And that reduces the final total offense level to 23; is that correct?

MS. HARDWICK: That is correct, Your Honor.

THE COURT: Okay. We've been going a little bit over an hour. Let's take about a five-minute recess. We'll be in recess for five minutes.

(Recess at 3:22 p.m. until 3:27 p.m.)

THE CLERK: Court is in session.

THE COURT: You may be seated except, Mr. Bethel, you-all can continue there at the podium.

Mr. Yates, I've given due consideration, I believe, to what you've said, to your words, to what Ms. Yates said, to what your boss said; and I want to give you credit for those things. I also, though, am concerned about your record. I'm concerned about the danger to this officer and the atmosphere in which this crime happened, about the company you were keeping, about the weapons that were in the car that you were in, that you were driving. You do have a prior felony record.

And I realize that the numbers have not fallen well for you in this guideline calculation. Nevertheless, I have considered whether, having -- being able to give you, actually, ten years under the advisory guideline, I could actually give

you more than your compadre got, which was 115 months. But the government has agreed for you to be sentenced at the low end of the guideline range.

So based upon my consideration of the sentencing guidelines and evaluating the reasonableness of the sentence through the lens of 18 U.S.C. 3553 and considering the testimony and considering your circumstances, family, job, and so forth, it is the order, judgment, and decree of the Court that you are committed to the custody of the Federal Bureau of Prisons to be imprisoned for a term of 46 months.

Having considered the guideline computations and having taken them under advisement, the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Furthermore, the sentence is reasonable when considering the following sentencing factors found at 18 U.S.C. 3553(a). First, the nature and circumstances of the offense and the history and characteristics of the defendant. Second, to reflect the seriousness of the offense and to promote respect for the law and to provide just punishment. Thirdly, to afford adequate deterrence to criminal conduct. Fourthly, to protect the public from further crimes of this defendant. And fifthly, to avoid unwarranted sentence disparities among defendants, which is one of the primary reasons for these guidelines.

Upon release from imprisonment, you shall be placed on

supervised release for a term of two years. Within 72 hours of release from custody, you shall report to the probation office in the district to which you are released. While on supervised release, you shall comply with the mandatory and standard conditions of supervised release on file with this Court.

The Court also orders the following special conditions. You shall participate in a program of drug testing administered by the United States Probation Office. You shall pay to the United States District Court Clerk a special assessment fee of $100, which is due immediately. Based on your inability to pay, the Court waives the imposition of a fine. And the Court finds that there is no identifiable victim who incurred a financial loss as a result of this offense.

Having considered all the available evidence that you're not likely to flee or pose a danger to the safety of any other person or the community if released pending a voluntary surrender, it is ordered that you be released and continued under the same conditions imposed by the magistrate judge on July 18, 2006, and that you report -- I'm sorry. Those conditions were imposed on you on July 18, 2006, and that you shall surrender at the institution designated by the Federal Bureau of Prisons before two p.m. on June 11, 2007. Until that time, you shall continue to comply with the conditions of release which were previously imposed by the magistrate judge.

Pursuant to 18 U.S.C. 924 and 28 U.S.C. 2461(c), you

47

1  are also to forfeit the following property to the United
2  States:  one nine-millimeter Luger Tec-DC9 and magazine loaded
3  with 49 rounds and one Beretta CX4-Storm nine-millimeter assault
4  rifle and magazine loaded with 17 rounds.
5       Mr. Harmon, do you have any motion with respect to that
6  forfeiture?
7       MR. HARMON:  Only, Your Honor, since the Court has
8  already included it in its oral pronouncement, I'd ask that the
9  clerk be directed to include the forfeiture in the written
10  judgment.
11       THE COURT:  Okay.  It will be included.
12       MR. HARMON:  Thank you, Your Honor.
13       THE COURT:  Now, are there any objections to the
14  sentence or to the manner in which the Court pronounced it?
15       MR. BETHEL:  None other than those that have already
16  been stated to the Court.
17       THE COURT:  Okay.  And those objections and comments
18  are noted.
19       Ms. Hardwick?
20       MS. HARDWICK:  No objections from the government, Your
21  Honor.
22       THE COURT:  Okay.  Then the sentence is ordered imposed
23  as stated.  Is there anything further from the government?
24       MS. HARDWICK:  No, Your Honor.
25       THE COURT:  Anything further from the defendant?

48

1       MR. BETHEL:  No, Your Honor.
2       THE COURT:  Okay.  Mr. Yates, I wish the best for you.
3  You've got your instructions as to when to report.  Good luck to
4  you.
5       MR. HARMON:  Your Honor, may I be excused?  This
6  completes my --
7       THE COURT:  You may be.
8       MS. HARDWICK:  Your Honor, may I be excused as well?
9       THE COURT:  You may be.
10       Mr. Harmon.
11       MR. HARMON:  Yes, sir.
12       THE COURT:  I said you may be, but is there a
13  forfeiture in Bearden that's in the plea agreement?
14       THE CLERK:  On Bearden.
15       MR. HARMON:  Yes.  His codefendant?
16       MR. BETHEL:  Your Honor, excuse me.
17       THE COURT:  Yes, sir.
18       MR. BETHEL:  I'm sorry.  Could we reopen the sentencing
19  hearing on the record just briefly?
20       THE COURT:  Yes.  If you'll hold just a moment, please.
21       MR. HARMON:  Your Honor, this is a case coming up this
22  afternoon?  Your Honor, may I consult just a second?
23       THE COURT:  You may.  Okay.  While you are consulting,
24  I'll reopen for Mr. Yates' attorney.
25       MR. BETHEL:  Your Honor, I would simply request a

49

1  recommendation on the record from the Court that if possible,
2  Mr. Yates be incarcerated as close as possible to Montgomery,
3  Alabama.
4       THE COURT:  Under his family circumstances and work
5  circumstances, I would recommend that.  As you know, the Court
6  can only recommend that.
7       MR. BETHEL:  Yes, Your Honor.  Thank you.
8       THE COURT:  Okay.  Thank you.  You are dismissed.
9       (Proceedings concluded at 3:35 p.m.)
10           * * * * * * * * * *
11           COURT REPORTER'S CERTIFICATE
12       I certify that the foregoing is a correct transcript
13  from the record of proceedings in the above-entitled matter.
14       This 27th day of September, 2007.

16           /s/ Risa L. Entrekin
             Registered Diplomate Reporter
17           Certified Realtime Reporter
             Official Court Reporter

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

MIDDLE _____ District of _____ ALABAMA

UNITED STATES OF AMERICA
**V.**
WALTER ARMADRASHAD YATES

## JUDGMENT IN A CRIMINAL CASE

| | |
|---|---|
| Case Number: | 2:06cr168-002-WKW |
| | (WO) |
| USM Number: | 11990-002 |
| | Donnie Bethel |
| | Defendant's Attorney |

### THE DEFENDANT:

X pleaded guilty to count(s)    2 of the Indictment on 11/21/2006

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 922(g)(1) | Felon in Possession of Firearm | 11/6/2005 | 2 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 10, 2007
Date of Imposition of Judgment

_____
Signature of Judge

W. KEITH WATKINS, UNITED STATES DISTRICT JUDGE
Name and Title of Judge

5 . 16 . 07
Date

AO245-C
GOVERNMENT
EXHIBIT

CASE
NO.   2:08cv66

EXHIBIT
NO.   E

DEFENDANT:        WALTER ARMADRASHAD YATES
CASE NUMBER:      2:06cr168-002-WKW

Judgment — Page ___2___ of ___6___

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

46 Months

X The court makes the following recommendations to the Bureau of Prisons:

The Court recommends that defendant be incarcerated as close to Montgomery, Alabama as possible.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐   at _____   ☐ a.m.   ☐ p.m.   on   _____   .

☐   as notified by the United States Marshal.

X The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

X   before 2 p.m. on   __June 11, 2007_____   .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to   _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT: WALTER ARMADRASHAD YATES
CASE NUMBER: 2:06cr168-002-WKW

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

**2 Years**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 2:06-cr-00468-WKW-WC    Document 54    Filed 03/05/2008    Page 4 of 6

DEFENDANT:        WALTER ARMADRASHAD YATES
CASE NUMBER:      2:06cr168-002-WKW

## SPECIAL CONDITIONS OF SUPERVISION

Defendant shall participate in a program of drug testing administered by the United States Probation Office.

Case 2:06-cr-00168-WKW-WC   Document 74   Filed 03/06/2007   Page 5 of 6

Judgment — Page __5__ of __6__

DEFENDANT:         WALTER ARMADRASHAD YATES
CASE NUMBER:       2:06cr168-002-WKW

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  100.00 | $ | $ |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |

| **TOTALS** | $                     0 | $                     0 |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the   ☐ fine  ☐ restitution.

the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

Case 2:06-cr-00168-WKW-WC Document 56 Filed 03/05/2008 Page 8 of 6

Judgment — Page ___6___ of ____6____

DEFENDANT: WALTER ARMADRASHAD YATES
CASE NUMBER: 2:06cr168-002-WKW

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☒  Lump sum payment of $ ___100.00___ due immediately, balance due

          ☐  not later than _____ , or
          ☐  in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☒  Special instructions regarding the payment of criminal monetary penalties:

        Criminal monetary payments shall be made payable to the Clerk, U.S. District Court, Middle District of Alabama, P.O. Box 711, Montgomery, AL 36101.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

        Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
        One 9mm Luger Tec-DC9, serial number D023016, and magazine loaded with 49 rounds.
        One Beretta CX4-Storm 9 mm assault rifle, serial number CS0777765, and magazine loaded with 17 rounds.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.